**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NANCY COX, | ) | **Case No.  1:07-cv-1372** |
| | ) | |
| **Plaintiff,** | ) | **Judge Dan Aaron Polster** |
| | ) | |
| **vs.** | ) | **MEMORANDUM OF** |
| | ) | **OPINION AND ORDER** |
| TRUE NORTH ENERGY, LLC., | ) | |
| | ) | |
| **Defendant.** | ) | |

Before the Court are two Motions to Dismiss filed by Defendant True North Energy, LLC, ("True North") that, when combined, seek dismissal of all of Plaintiff Nancy Cox's claims.  **(ECF Nos. 6 (Defendant's Partial Motion to Dismiss Plaintiff's First Amended Complaint) and 12 (Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint)** (collectively "the Rule 12(b)(6) Motions," "the Motions," or "the Motions to Dismiss")**.)**  For the reasons that follow, True North's Motions are **GRANTED IN PART, AND DENIED IN PART**.

## I.  BACKGROUND

The Court takes as true the allegations contained in Cox's Second Amended Complaint for purposes of the Motions to Dismiss.  *See Erickson v. Pardus*, --- U.S. ---, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atl. Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955, 1965

(2007) (citations omitted)).  As alleged in Cox's Second Amended Complaint, the facts are as follows.  True North operates approximately one hundred gas stations and convenience stores throughout Ohio.  Nancy Cox was hired on September 3, 2001 as a store manager for one of True North's stores located in Lorain County, Ohio.  Cox managed the store for approximately five years, from September 3, 2001 until May 8, 2006, at which time True North fired Cox.[1]  Cox commenced working for True North again on June 30, 2006, managing a different True North store.  Cox was subsequently diagnosed on Tuesday, September 19, 2006 with cancer, in the form of a malignant neoplasm in her kidney.  On Friday of the same week, September 22, 2006, Cox requested Family and Medical Leave Act ("FMLA") leave to obtain necessary, emergency treatment for her cancer, supported by certification of the serious medical condition provided by her urologist.  By Monday, September 25, 2006, True North denied Cox's request for leave without explanation to Cox about why she was ineligible for FMLA leave.  Then, on Friday, September 29, 2006, Char Salmons (Manager of Operations for True North) told Cox that she could return to work with True North after her recovery period.  Cox relied on Salmons's promise when she left work to undergo cancer treatment.  The following Monday, October 2, 2006, Cox underwent surgery to remove the malignant tumor from her kidney.

Fortunately, the surgery was successful, and Cox called several True North supervisors, including Ms. Salmons, on November 9, 2006 to inform these persons that Cox was available to return to work on November 13, 2006.  Cox followed up her initial phone call with another phone call the next day (November 10, 2006) to Ms. Salmons and Tom Grady, the

---

[1]Cox alleges that True North fired her "without cause" and that the Ohio Department of Jobs and Family Services found that Cox was fired without just cause.  Whether Cox was fired with or without just cause is irrelevant for purposes of this Opinion and Order.

District Manager for True North.  Ms. Salmons informed Cox during the November 10, 2006 telephone call that True North was looking for a position for Cox, but did not have a position for her at that time.  Salmons informed Cox that True North would continue to look for a position for Cox, and that someone would contact Cox by November 15, 2006.  Cox received her doctor's approval to return to work on November 13, 2006, but True North thereafter refused to permit Cox to return to work, despite having job openings for store managers after November 13, 2006.

Cox filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on April 7, 2007, alleging that True North fired her because of a disability (cancer) in violation of Title I of the Americas with Disabilities Act ("ADA").  On April 13, 2007, Cox filed a complaint in the Court of Common Pleas for Lorain County, Ohio, alleging FMLA violations, disability discrimination in violation of Ohio's discrimination law, a common law tort claim for wrongful termination in violation of Ohio public policy, a promissory estoppel claim, and a claim seeking punitive damages and emotional distress damages against True North.  True North removed the complaint to federal district court on May 11, 2007 (ECF No. 1), and filed a Partial Motion to Dismiss Cox's complaint at the same time (ECF No. 2).  Cox filed a First Amended Complaint on June 13, 2007 (ECF No. 3), containing the same, albeit rearticulated, claims.  Cox also filed her brief in opposition to True North's Partial Motion to Dismiss on the same day (ECF No. 4).

Approximately one week later, True North filed its Partial Motion to Dismiss Cox's First Amended Complaint (ECF No. 6).  The Court conducted a Case Management Conference on July 12, 2007, in which all parties and their counsel participated, which was followed by a settlement conference on August 1, 2007.  No settlement was reached during these

conferences, however, and on August 2, 2007, the EEOC issued Cox a Right to Sue Letter on her claim of disability discrimination.

During a September 5, 2007 teleconference, the Court granted Cox's oral motion to file a Second Amended Complaint.  (ECF No. 8.)  Cox filed her Second Amended Complaint on September 24, 2007, which added a claim for violation of the ADA (ECF No. 10).  Cox also filed her brief in opposition to True North's Partial Motion to Dismiss Cox's First Amended Complaint on the same day (ECF No. 11).  Four days later, True North filed its Motion to Dismiss Cox's Second Amended Complaint, specifically focusing on Cox's disability discrimination claims and incorporating its earlier Partial Motion to Dismiss the First Amended Complaint (ECF No. 12).  On October 2, 2007, True North also filed a document entitled "Reply Memorandum in Support of Its Motion to Dismiss Plaintiff's Second Amended Complaint" (ECF No. 13).

On October 24, 2007, the Court issued an Order instructing the parties to brief the question of whether a valid claim exists under Ohio law for wrongful discharge in violation of the public policy embodied in the FMLA's Department of Labor-promulgated regulations (ECF No. 14).  Cox was ordered to include this argument in her response brief to True North's Motion to Dismiss Cox's Second Amended Complaint.  The Court also ordered True North to file a reply brief one week later.  Both parties have now filed their respective briefs (ECF Nos. 15 and 17 respectively), which the Court has carefully considered.

## II.  LAW AND ANALYSIS

Cox brings several claims in her Second Amended Complaint.  Counts I and II are FMLA claims for interference and retaliation respectively.  Count III alleges disability

-4-

discrimination claims in violation of the federal ADA and Ohio's state anti-discrimination statute, Ohio Revised Code § 4112.01 *et seq.* ("§ 4112").  Count IV contains a claim that True North discharged Cox in violation of the public policy goals underlying the federal FMLA and the federal regulations promulgated pursuant to the FMLA.  Count V makes a state promissory estoppel claim, while Count VI seeks punitive and emotional distress damages.  True North moves to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim upon which relief may be granted.

**A.  Rule 12(b)(6) Standard**

True North moves to dismiss the case pursuant to Rule 12(b)(6).  When ruling on a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint liberally in a light most favorable to the non-moving party.  *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998).  Also, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, --- U.S. ---, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atl. Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955, 1965 (2007) (citations omitted)).  *See also*, *NicSand, Inc. v. 3M Co.*, No. 05-3431, --- F.3d ---, 2007 U.S. App. LEXIS 24270 (6th Cir. Oct. 17, 2007) (en banc) (viewing a complaint "through the prism of Rule 12(b)(6) [requires] us to accept all of its allegations and all reasonable inferences from them as true") (citing *Mich. Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 533 (6th Cir. 2002))).  When reviewing a Rule 12(b)(6) motion to dismiss, the Court must "determine whether the plaintiff can prove a set of facts in support of [her] claims that would entitle [her] to relief."  *Daubenmire v. City of Columbus*, No. 06-3461, --- F.3d ---, Slip Op. at 4 (6th Cir. Nov. 6, 2007) (quoting *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d

-5-

356, 360 (6th Cir. 2001)).[2]  In order to preclude dismissal under Rule 12(b)(6), a complaint must

contain either direct or inferential allegations which comprise all of the essential, material

elements necessary to sustain a claim for relief under some viable legal theory.  *Lewis v. ACB*

*Business Service, Inc.*, 135 F.3d 389, 406 (6th Cir. 1998)   The Court addresses each of True

North's arguments in turn.

---

[2]Recently the United States Supreme Court addressed the standard for evaluating motions to dismiss in *Bell Atlanta Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955 (2007).  The Court in *Twombly*, considering the standard for dismissing complaints filed under Section 1 of the Sherman Antitrust Act, explained that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 127 S. Ct. at 1964-65 (citations and quotation marks omitted).  Though the complaint need not contain "detailed" factual allegations, the Court instructed, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  *Id.* (internal citation and quotation marks omitted).

*Twombly*'s effect on the applicable standard of review for general Rule 12(b)(6) motions to dismiss is still unclear in the Sixth Circuit.  *See Weisbarth v. Geauga Park Dist.*, No. 06-4189, 2007 U.S. App. LEXIS 20261, *7 (6th Cir. August 24, 2007) ("Significant 'uncertainty as to the intended scope of the Court's decision [in Twombly]' persists . . . particularly regarding its reach beyond the antitrust context." (quoting *Iqbal v. Hasty*, 490 F.3d 143, 2007 WL 1717803, at *11 (2d Cir. 2007))).  *See also, e.g., Ass'n of Cleveland Fire Fighters v. City of Cleveland*, No. 06-3823, --- F.3d ---, 2007 U.S. App. LEXIS 22670, *5-6, *10-11,*19 (6th Cir. Sept. 25, 2007) (stating that the *Twombly* Court "disavowed the oft-quoted Rule 12(b)(6) ["no set of facts"] standard of *Conley v. Gibson*," but then using internally inconsistent approaches by applying the "plausibility standard" to one claim but the "no set of facts" standard to another claim in the same opinion).

Moreover, the Sixth Circuit made nary a mention of *Twombly* in the two most recent published cases reviewing Rule 12(b)(6) motions to dismiss.  *See Dubay v. Wells*, No. 06-2107, --- F.3d ---, Slip Op. at 3 (6th Cir. Nov. 6, 2007) ("The motion should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief.'" (quoting *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004))); *Daubenmire v. City of Columbus*, No. 06-3461, --- F.3d ---, Slip Op. at 4 (6th Cir. Nov. 6, 2007) (when reviewing a Rule 12(b)(6) motion, "[w]e must . . . determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." (quoting *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001))).

Despite the uncertainty of the applicable Rule 12(b)(6) standard post-*Twombly*, resolution of the instant Motions "does not depend upon the nuances of *Twombly*'s effect on the dismissal standard," *Weisbarth*, No. 06-4189, 2007 U.S. App. LEXIS 20261, *9; the primary arguments are not over the contents of the Second Amended Complaint, but whether Cox meets several statutory requirements.

**B. Counts I and II: FMLA Interference and Retaliation Claims**

The question of whether Cox's FMLA-based claims survive the Rule 12(b)(6) stage turns on a threshold question, namely the criteria to be an "eligible employee" under the FMLA. True North claims that Cox was not eligible for FMLA rights, and thus her FMLA claims must be dismissed because she had no FMLA rights to enforce. The Court disagrees.

Federal courts recognize two distinct theories of recovery that arise under the FMLA statute; entitlement (also called interference) pursuant to 29 U.S.C. § 2615(a)(1), and retaliation (also called discrimination) pursuant to 29 U.S.C. § 2615(a)(2). *See Hoge v. Honda of America Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004). *See also*, *Edgar v. JAC Prods.*, 443 F.3d 501, 507 (6th Cir. 2006) (citing *Arban v. W. Publ. Corp.*, 345 F.3d 390, 400-401 (6th Cir. 2003) (explaining the entitlement and retaliation theories of recovery under the FMLA). An employee must qualify as an "eligible employee" under the FMLA before he or she can enforce the rights provided by the statute. *See Edgar*, 443 F.3d at 507; *Humenny v. Genex Corp.*, 390 F.3d 901, 905-06 (6th Cir. 2004) (holding that if a plaintiff does not qualify as an "eligible employee" under the FMLA, then the plaintiff does not state a claim for relief for retaliation under the FMLA). A court may properly dismiss an FMLA interference or retaliation claim under Rule 12(b)(6) if a plaintiff fails to establish that he or she is an eligible employee under the FMLA. *See, e.g.*, *Morrison v. Amway Corp.*, 323 F.3d 920, 930 (11th Cir. 2003).

An eligible employee, as defined by the FMLA, is "an employee who has been employed (i) for at least 12 months by the employer with respect to whom leave is requested . . . and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). True North argues that Cox cannot meet the first of the two

eligibility requirements, i.e. that she was not employed "for at least 12 months" by True North, because her most recent term of employment was shorter than twelve months and her prior term of employment does not count toward the FMLA's 12-month requirement.[3]  Conversely, Cox argues that the requisite 12 months of employment need not be consecutive, and that she has worked for True North for several years, well in excess of the 12 months necessary for FMLA eligibility.  Cox rests her argument on the plain language of the statute, as invoked by various district court opinions, as well as the Department of Labor regulations interpreting the statute, and (non-binding but persuasive) federal circuit and district court case law.  For its part, True North cites Sixth Circuit case law that, it claims, is binding precedent on the question before the Court.  True North also argues in the alternative that the Department of Labor regulations are unconstitutional.

### 1.  No On-Point Sixth Circuit Precedent Exists

The Court rejects True North's primary, precedent-based argument; the Sixth Circuit has not directly addressed the question of whether the "12 months" required under § 2611(2)(A)(i) must be continuous.  The closest analogous case from the Sixth Circuit – and the

---

[3]True North previously argued that Cox was ineligible under both FMLA eligibility prongs.  (See ECF No. 2, Def.'s Part. Mot. to Diss. Compl., at 4-6 (arguing that "Plaintiff did not meet the statutory requirement of having worked for True North for at least 1,250 hours during the twelve months preceding her request for FMLA leave" and "At the time that Plaintiff requested leave . . . Plaintiff had only worked for True North for approximately three months from June 30, 2006 until September 22, 2006.").)

By True North's own admission, however, its initial Partial Motion to Dismiss was "render[ed]. . . moot" when Cox filed her First Amended Complaint.  True North's subsequent briefs (ECF No. 6, the Partial Motion to Dismiss Plaintiff's First Amended Complaint and ECF No. 13, the Reply Memorandum in Support of its Motion to Dismiss Plaintiff's Second Amended Complaint) narrow its argument to solely contending that Cox is not an FMLA-eligible employee because she allegedly did not work for True North for 12 months before requesting FMLA leave.  (See, e.g., ECF No. 6, at 5-6; ECF No. 13, at 2.)

case on which True North primarily relies – is *Mutchler v. Dunlap Memorial Hospital*, 485 F.3d 854 (6th Cir. 2007).

In *Mutchler*, the court addressed an employee's FMLA eligibility status, in the context of interpreting the meaning of "hours of service" as the phrase is used in the second eligibility prong.  *Id.* at 857.  An employer paid for "bonus" hours that were credited to employees – without the employee actually working the bonus hours – as an incentive for employees to work undesirable weekend hours.  An employee who had benefitted from the bonus hours program sued, alleging violations of the FMLA.  *Id.* at 856.  The employer moved to dismiss the case, arguing that the employee had not met the 1,250 hours requirement, and thus was not entitled to FMLA protections.  *See id.*  The employee argued that her bonus hours should be considered in calculating her total hours of service, but the district court disagreed.  *Id.* at 856-57.  The Sixth Circuit affirmed, and held that the bonus hours did not constitute "hours of service" for purposes of calculating the 1,250 hours of service required to be FMLA-eligible under 29 U.S.C. § 2611(2)(A)(ii).  *Id.*  Critically, the *Mutchler* court's holding only interpreted the phrase "hours of service" to determine in the employee was entitled to FMLA rights, not the "12 months of service" requirement.

True North cites a particular sentence in the opinion for its proposition that *Mutchler* controls here.  (ECF No. 13, at 5.)  Paraphrasing the FMLA eligibility requirements at the start of its legal analysis, the Sixth Circuit panel stated that "[t]o be 'eligible' under the FMLA, an employee must have been employed by the employer at issue for the preceding twelve months and must have put in at least 1,250 'hours of service' during that time."  *Id.*  True North characterizes this phrase as the "holding," (ECF No. 13, at 5) but it does so erroneously.

The analysis contained in the *Mutchler* opinion clearly shows that the court was only focused on the second FMLA eligibility prong.  Moreover, the court explained at the outset of the opinion that it was only dealing with the "hours of service" eligibility prong.  *Mutchler*, 485 F.3d at 855 (stating in applicable part that "Plaintiff's appeal rests on . . . [the claim] that she met the 'hours of service' requirement for purposes of FMLA eligibilty.").  Accordingly, the 12-month requirement was not at issue in *Mutchler*, and the statement that (inaccurately) recited the 12-month requirement is no more than dicta, if anything, as to the second FMLA eligibility prong.  Thus, no Sixth Circuit authority binds the Court here, and the Court must independently interpret the statutory language.

### 2.  The Statutory Language is Clear and Unambiguous

As in all statutory construction cases, the Court begins "with the language of the statute.  The first step 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'"  *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (in turn citing *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240 (1989))).  The Court need go no further "if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'"  *Id.* (quoting *Robinson*, 519 U.S. at 340).  Also, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."  *City of Columbus v. Ours Garage & Wrecker Serv.*, 536 U.S. 424, 434 (2002) ("*Ours Garage*") (citing *Russello v. United States*, 464 U.S. 16, 23 (1983)).  This principle of statutory construction is known as "the *Russello* presumption."  *See id.*

-10-

District courts in the Sixth Circuit, when faced with facts analogous to Cox's case, have found that the plain meaning of 29 U.S.C. § 2611(2)(A) alone is enough to allow aggregation of non-continuous employment to meet the 12-month requirement.  *See Bell v. Prefeix, Inc.*, 422 F. Supp.2d 810, 813 (E.D. Mich. 2006) (holding that "[t]he plain language of the statute does not . . . support defendant's contention that the 12 months must be continuous"); *Mitchell v. Continental Plastic Containers, Inc.*, No. C-1-97-412, 1998 U.S. Dist. Lexis 21464 (S.D. Ohio March 27, 1998), *adopting* 1998 U.S. Dist. Lexis 21465 (S.D. Ohio March 3, 1998) (finding that the plain language of the statute does not require a plaintiff to work 12 consecutive months to be an FMLA-eligible employee).  A district court in the Tenth Circuit similarly adopted the reasoning employed in *Bell* to reach the same conclusion.  *See Thomas v. Mercy Mem'l Health Ctr., Inc.*, Case No. CIV-07-022-SPS, 2007 WL 2493095, 2007 U.S. Dist. LEXIS 64184, *8-9 (E.D. Okla. Aug. 29, 2007).

The Court similarly finds that the language in § 2611(2)(A) is clear.  As the *Bell* court reasoned, "if Congress had intended to require 12 months of continuous employment, it could simply have done so by using the same language in both provisions."  *Bell*, 422 F. Supp.2d at 813.  Congress could have also used the words "consecutive" or "continuous" in the statute if Congress had intended the 12 months to be consecutive or continuous.  *See Thomas*, 2007 U.S. Dist. LEXIS 64184 at *8.  Most telling, however, is that if Congress had intended the 12 months to be consecutive, there would have been no need for <u>two</u> separate eligibility prongs  – each an enumerated subsection of the statute – at all.  Instead, the statute could have simply used a single sentence reading "'[t]he term 'eligible employee' means an employee who has been employed for the previous 12 months by the employer with respect to whom leave is requested under

-11-

section 2612 of this title and has at least 1,250 hours of service with such employer during that period.'" *Id.*  Applying the *Russello* presumption confirms this interpretation of the statute; language in the second subsection explicitly limiting the 1,250 hours of service to a certain time period is not similarly included in the companion 12-months employment subsection, evidence that Congress intended the two provisions to be read as Cox argues.

The only federal circuit court to directly consider the question of whether the 12 months of employment must be continuous held in the negative, although by way of a different analytical track.  *See Rucker v. Lee Holding Co.*, 471 F.3d 6, 13 (1st Cir. 2006)[4].  In *Rucker*, the plaintiff-former employee worked for the defendant-employer for five years and then left, but rejoined as a full-time employee five years later.  *Rucker*, 471 F.3d at 8.  Seven months after rejoining, the plaintiff took medical leave.  *Id.*  The employer terminated plaintiff's employment two months later.  *Id.*  After the plaintiff filed suit alleging FMLA violations, the employer sought dismissal on the grounds that the plaintiff could not satisfy the 12-month employment requirement, and thus he was not an eligible employee under the FMLA.  *Id.*  The district court found for the defendant, and granted the motion to dismiss.

On appeal, the First Circuit reversed, concluding that the employee could aggregate his employment with the defendant-employer to satisfy the 12-months service requirement.  *Rucker*, 471 F.3d at 13.  The court held that "the FMLA itself is ambiguous as to whether previous periods of employment count toward the 12-month requirement, but

---

[4]Interestingly, the First Circuit panel included Senior Judge Siler, of the Sixth Circuit, sitting by designation.

regulations promulgated by the United States Department of Labor (DOL), as interpreted by the DOL, establish that previous periods of employment do count."  *Id.* at 8.

Importantly, the *Rucker* court determined that the statute was ambiguous (and thus the plain language did not control) because if found that the two eligibility subsections "are not sufficiently parallel to draw definitive conclusions from the difference in language."  *Rucker*, 471 F.3d at 10-11 (citing *Ours Garage*, 536 U.S. at 435-436 (explaining that "the *Russello* presumption – that the presence of a phrase in one provision and its absence in another reveals Congress' design – grows weaker with each difference in the formulation of the provisions under inspection.")).  The *Rucker* court was troubled that the statute has a period over which to measure the requisite 1,250 hours of service, but not as to the 12-month requirement.  *Id.*  The Supreme Court language upon which the *Rucker* court relied for its interpretative rule, however, interpreted two statutory provisions that constituted a "general rule and the safety exception" to that general rule.  *See Ours Garage*, 536 U.S. at 435.  By contrast, the two FMLA eligibility subsections found in § 2611(2)(A)(i)-(ii) constitute two equally-important requirements.

The *Rucker* court's narrowly focused reading of § 2611(2)(A) ignores the fact that the two subsections operate in tandem to establish the service requirements an employee must meet before he or she becomes FMLA-eligible.  Neither subsection is a general rule or an exception to the other, as was the case in *Ours Garage*; here, an employee must meet <u>both</u> prongs to be eligible.

Consequently, the subsections in § 2611(2)(A) are indeed parallel statutes, and the *Russello* presumption strongly applies here; the difference in plain language demonstrates Congress's intent to differentiate between the two eligibility requirements.  Therefore, the Court

-13-

joins with the *Bell*, *Mitchell*, and *Thomas* courts and finds that the plain textual language of § 2611(2)(A)(i) does not require employment for the 12 consecutive months immediately preceding any FMLA leave.

In light of this finding, True North's argument that Cox is FMLA-ineligible for lack of 12 continuous months of service must be rejected; that Cox was employed continuously from September 3, 2001 to May 8, 2006 is undisputed, and that period of service by itself obviously covers at least 12 months. Furthermore, Cox recommenced employment with True North on June 30, 2006, less than eight weeks after her initial termination, and it is undisputed that Cox was employed with True North at the time she requested FMLA leave. Therefore, the Court finds that Cox meets the 12-months of service requirement.

### 3. In the Alternative, Principles of Agency Deference Apply

The outcome for Cox's case is the same even if § 2611(2)(A)(i) is ambiguous as the courts found in *Rucker* and *O'Connor v. Busch's Inc.*, 492 F. Supp. 2d 736 (E.D. Mich. 2007). As explained previously, the *Rucker* court initially determined that the plain meaning of the statute was ambiguous as to whether Congress intended the twelve-month requirement to be calculated in the aggregate. *Rucker*, 471 F.3d at 10-11. The court then looked to the DOL

regulations to resolve the ambiguity, citing the well-settled *Chevron* principles of agency deference. *Id.* at 11-12. The regulation in pertinent part reads as follows:

> The 12 months an employee must have been employed by the employer need not be consecutive months. If an employee is maintained on the payroll for any part of a week, including any periods of paid or unpaid leave (sick, vacation) during which other benefits or compensation are provided by the employer (e.g., workers' compensation, group health plan benefits, etc.), the week counts as a week of employment. For purposes of determining whether intermittent/occasional/casual employment qualifies as "at least 12 months," 52 weeks is deemed to be equal to 12 months.

29 C.F.R. § 825.110(b).

The *Rucker* court found the regulation itself to be ambiguous; under one interpretation, the first sentence stands alone and resolves the instant question, while under an opposite interpretation, the second and third sentences limit the first sentence. *See Rucker*, 471 F.3d at 12. Accordingly, the *Rucker* court cited the principle of giving substantial deference to an agency's own interpretation of its regulations, "so long as that interpretation is consistent with the regulation and 'reflect[s] the agency's fair and considered judgment on the matter in question.'" *Id.* (quoting *Auer v. Robbins*, 519 U.S. 452, 461-62 (1997)). The court found that the DOL "has expressed the view that the first sentence in its regulation, allowing for non-consecutive months, is not limited by the sentences that follow." *Rucker*, 471 F.3d at 12 (citing both the regulatory preamble explaining the regulation, and an amicus brief the DOL filed in *Rucker* asserting that a five-year gap in employment "does not prevent an employee from using his earlier employment to satisfy the 12-month requirement").

The court deferred to the DOL's interpretation of its own regulation, and therefore explained that "we hold the complete separation of an employee from his or her

-15-

employer for a period of years, here five years, does not prevent the employee from counting earlier periods of employment toward satisfying the 12-month requirement." *Id.* at 13.

Likewise, a recent federal district court opinion addressing the 12-month requirement followed the *Rucker* court's approach. *See O'Connor v. Busch's Inc.*, 492 F. Supp. 2d 736 (E.D. Mich. 2007). In *O'Connor*, the plaintiff worked for the defendant-employer in the mid-1980s, but she subsequently ceased working for the employer during that time. The employer rehired the plaintiff in May of 2005, and a subsequent accident in the summer of 2005 led to the plaintiff requesting time off to seek medical treatment. The employer denied the leave, the plaintiff resigned soon thereafter (on January 6, 2006), and the plaintiff then filed suit for violations of her FMLA rights. The defendant employer moved for dismissal under Rule 12(b)(6), arguing that the plaintiff was not eligible for FMLA's protections and thus could not state a valid FMLA claim. The plaintiff could not meet the 12-month employment requirement, the defendant argued, because her employment with the company in the mid-1980s should not be counted towards her eligibility under the FMLA.

The court denied the defendant's Rule 12(b)(6) motion in an extremely thorough and well-reasoned opinion. The court engaged in a comprehensive analysis of the FMLA's purpose and the Congressional intent underpinning the statute, discussed the competing concerns presented by each side's respective arguments, analyzed the *Rucker* court's reasoning, and then "agree[d] with the decision in *Rucker*." *O'Connor*, 492 F. Supp. 2d at 742. Notably, the court found that the plain language of § 2611(2)(A)(i) "clearly permits an employee to count previous periods of employment toward satisfying the twelve month requirement." *Id.* The court then concluded that Congress had not directly addressed whether "there is any limit to the amount of

-16-

time between separate periods of employment that would prevent a plaintiff from combining them" for meeting the 12-month requirement.  *Id.*  The court therefore deferred to "the DOL's interpretation of the Act and its regulation as permitting an employee to combine all periods of employment can be read consistently with the overall purpose of the Act."  *Id.*  Of particular note, the court reasoned that refusing to aggregate non-continuous periods of employment for FMLA eligibility purposes would undermine the statutory purpose:

> For instance, an employer could avoid its obligations to employees by simply not employing them for more than twelve months at a time.  The employer could, repeatedly, employ the worker for eleven months, terminate him or her, and then rehire the worker after a brief period of unemployment with the relevant employer.  Under these circumstances, an employee who has worked the requisite number of hours under the Act and, therefore, may have a justifiable expectation of its protections, could never be an eligible employee because he or she would not meet the twelve months of employment requirement.

*O'Connor*, 492 F. Supp. 2d at 742.

The court gave deference to the DOL's position, and accordingly concluded that the plaintiff stated a valid claim under the FMLA.  *Id.* at 743.  Consequently, the court denied the defendant's Rule 12(b)(6) motion.  *Id.*

Here, assuming *arguendo* that the statutory language is ambiguous, the Court agrees with the decisions in *Rucker* and *O'Connor*; the facts, viewed in the light most favorable to Cox and as construed through the analytical lens employed by the *Rucker* and *O'Connor* courts, lead the Court to follow the reasoning contained in those two opinions.[5]  Cox's gap in employment was approximately eight weeks.  In *Rucker*, the gap in plaintiff's employment was

---

[5]Although it has no impact on the instant ruling, the Court observes that under the facts of this case, at least as alleged by Cox, it would be particularly unfair to read the statute the way True North wants.  Cox alleges she was fired without cause, the Ohio Department of Jobs and Family Services found in her favor, and True North rehired her.

five years, while the employee in *O'Connor* recommenced employment over twenty years later. Both courts declined to adopt as a matter of law some quantified period of time that would be too long of a break in employment, but the courts' reasoning clearly demonstrates that the Court should defer to the DOL's interpretation of its own regulations interpreting the statute.  The Court thus finds that under the DOL's regulations, a break of less than eight weeks does not preclude Cox from FMLA eligibility in light of her previous years of employment with True North which, when aggregated, clearly constitute more than 12 months of employment.

Accordingly, regardless of the line of reasoning used, the Court rejects True North's argument that Cox is ineligible for FMLA because she cannot meet the 12-months of employment eligibility prong in § 2611(2)(A)(i).

### 4.  True North's Alternative Argument Is Also Rejected

In the alternative to its primary argument, True North argues that Cox cannot state a claim upon which relief may be granted because "29 C.F.R. § 825.110(b) is unconstitutional to the extent that it converts ineligible employees into eligible employees, contrary to the express language of the FMLA."  (ECF No. 13, 7.)  The Court also rejects this argument.

True North concedes that "[i]f 29 C.F.R. § 825.110(b) is valid, by virtue of it [Cox] is to be deemed eligible for FMLA leave in September 2006."  (*Id.* at 7-8.)  True North asserts, however, that 29 C.F.R. § 825.110(b) is unconstitutional because it makes Cox an FMLA-eligible employee.  (*Id.* at 8.)  As such, the crux of True North's argument is that the regulation should be found unconstitutional because it does not like the result when the regulation is applied in Cox's case.  According to True North's argument, Cox is ineligible for FMLA as dictated by *Mutchler*, and the regulation that arguably compels the opposite result

-18-

should consequently be considered unconstitutional (because it says Cox is eligible). For several reasons, True North's self-serving logic does not withstand critical analysis, premised as it is on a faulty reading of case law.

First, and as an initial matter, the Court finds that the plain language of the statute clearly instructs that Cox's 12 months of employment need not have been consecutive. Thus, the constitutionality of the regulation is not at issue pursuant to the plain meaning rule as expressed in *Barnhart v. Sigmon Coal Co.*, 534 U.S. at 450 (explaining that the Court need not proceed past the plain meaning of a statute "if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'") (quoting *Robinson v. Shell Oil Co.*, 519 U.S. at 340).

Second, True North erroneously contends that the Sixth Circuit's holding in *Mutchler* "mandated" that the 12 months must be consecutive. Accordingly, the argument goes, binding precedent dictates that Cox was statutorily ineligible for FMLA leave and the regulations to the contrary are unreasonable and therefore unconstitutional. (ECF No. 13, 7.) As explained previously, however, this view of *Mutchler*'s import and precedential value is not persuasive; *Mutchler* had nothing to do with interpreting the "12-months employment" requirement. A generalized (mis)statement of the statutory language in dicta, in a case explicitly interpreting a different statutory provision, hardly constitutes a precedential holding applicable to the instant case as True North asserts.

Third, in addition to relying on *Mutchler*, True North's other case law-based arguments are misguided. True North cites to case law finding the DOL's FMLA regulations unconstitutional as applied in some FMLA-eligibility cases. (See ECF No. 13, Def. Repl. Mem., at 8 (citing *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579, 582 (7th Cir. 2000); *Brungart v.*

-19-

*BellSouth Telecom. Inc.*, 231 F.3d 791, 796-97 (11th Cir. 2000); *McQuain v. Ebner Furnaces, Inc.*, 55 F. Supp.2d 763 (N.D. Ohio 1999)).)  Notably these cases addressed the constitutionality of the DOL regulations found at 29 C.F.R. § 825.110(<u>d</u>), rather than the regulation in question here (29 C.F.R. § 825.110(<u>b</u>)).  Section 825.110(d) "purports to extend the eligibility provisions of the FMLA to an otherwise ineligible employee who is not promptly notified after requesting leave that she is ineligible for it under the statute."  (ECF No. 13, Def. Repl. Mem., at 8.)  The courts cited above found that such an infringement on Congress's law-making powers is unconstitutional.  True North argues by analogy that 29 C.F.R. § 825.110(b) as construed by *Rucker* and *O'Connor* is unconstitutional because it would make FMLA-eligible those employees who would otherwise be ineligible for FMLA protections.

   The analogy does not withstand critical analysis, however, because there is no "converting" involved here.  True North only argues Cox is ineligible for FMLA leave pursuant to the 12-months employment requirement; even if the 12-month requirement is ambiguous as discussed, the regulation does not "convert" an employee who is otherwise ineligible into an eligible employee.  Rather, the regulation merely interprets and clarifies who is eligible in the first place.

   Fourth, True North's argument is premised on a narrowed interpretation of the statute either rejected or adopted to the contrary by other courts.  The statutory definition of "eligible employee" is plain, True North argues, because the statutory language "does not suggest that the 12 month period is non-consecutive."  (ECF No. 13, Def. Repl. Mem., at 9.)  Accordingly, the argument goes, "there is no ambiguity in the statute concerning eligibility for

family medical leave" and thus no "gap" to be filled by agency interpretive regulations. (*Id.* at 8.) Therefore, True North contends, the interpretive regulations are unreasonable and they unconstitutionally "attempt to pry apart the clear words of the act in order to create a gap into which [the DOL] can wedge its policy preferences." (*Id.* at 8.)

True North's "plain meaning" argument fails for at least two reasons. First, *Rucker*, while not binding authority, is highly persuasive authority directly on point, and the *Rucker* court rejected the "plain meaning" argument True North posits. Second, True North discounts or ignores the inverse argument contained in its position; if the "FMLA itself does not suggest that the 12 month period is non-consecutive," as True North contends, neither does the "FMLA itself" suggest that the 12 month period must be consecutive. Indeed, as explained previously, several district courts have found the statutory language to be plain enough, but contrary to True North's position. Even if the Court were to find that both plain meaning interpretations are reasonable interpretations – therefore making the statutory language ambiguous – that finding would belie True North's argument that the regulations are unnecessary and therefore unconstitutional.

Fifth and finally, True North asserts a distinction between situations wherein the employee voluntarily separated from the employer before returning to work, and situations wherein the separation was involuntary. (ECF No. 13, Def. Repl. Mem., at 9.) According to True North, "[t]he *Rucker* Court [sic] determined that plaintiff's complaint had stated a claim for relief since the Department of Labor had reasonably interpreted the relevant period to include prior employment five years earlier in a circumstance where the plaintiff had been *voluntarily separated* from her employer." (*Id.* (emphasis included).) A thorough reading of the *Rucker*

opinion shows no such focus on the circumstances surrounding employment separation, however, and True North cites no other authority for this proposition.  The plaintiff in *Bell* even contended that he was "laid off" rather than terminated, yet the court placed no importance on that distinction.  Furthermore, focusing on the separation circumstances would certainly implicate the policy concerns articulated in the *O'Connor* court's hypothetical, discussed above. Repeatedly terminating – an "involuntary separation," at least from the employee's perspective – and then rehiring employees would theoretically allow an employer to avoid FMLA liabilities in perpetuity.  The Court rejects this interpretation.

To summarize this section of the Opinion, the statutory language in question is clear and unambiguous.  The Supreme Court has instructed that in such situations, the ordinary, plain meaning of the statutory language controls, and the Court therefore finds that Cox may aggregate her total time of employment with True North for purposes of satisfying the FMLA's "12 months of employment" requirement.  Additionally, assuming the statutory language is ambiguous, highly persuasive authority and appropriate agency deference lead to the same conclusion.  Taking the allegations in Cox's Second Amended Complaint as true for purposes of the instant Motions, Cox was an FMLA-eligible employee, and True North's Rule 12(b)(6) Motions are **DENIED** as to Counts I and II.[6]

## C. Count III: Federal ADA and State Disability Discrimination Claims

In Count III, Cox alleges True North discriminated against her in violation of federal and state anti-disability discrimination statutes by failing to make reasonable

---

[6]Of course this is not a definitive finding that Cox is eligible for FMLA rights.  The Court merely accepts as true for purposes of this Rule 12(b)(6) ruling the "fact" that Cox can also meet the 1,250 hours of service requirement.

accommodations and by terminating her based on her kidney cancer condition.  Reading Cox's

Second Amended Complaint in the light most favorable to her claims, she has stated a claim for

which relief may be granted, regardless of the applicable Rule 12(b)(6) standard.

When a disability discrimination plaintiff makes claims under both the federal

ADA and Ohio disability law found in § 4112, the case law instructs that both claims are

generally subject to the legal analysis applicable to federal ADA claims.  *See Brenneman v.*

*MedCentral Health Sys.*, 366 F.3d 412, 418 (6th Cir. 2004) (citing *Martin v. Barnesville*

*Exempted Vill. Sch. Dist. Bd. of Educ.*, 209 F.3d 931, 934 n.2 (6th Cir. 2000) (holding that "both

federal and Ohio discrimination actions require the same analysis")).[7]  *See also*, *Wysong v. Dow*

*Chemical Co.*, No. 05-4197, --- F.3d ---, 2007 U.S. App. LEXIS 22975, *21-22 ("Because '[t]he

federal [ADA] is similar to the Ohio handicap discrimination law[,]. . . [w]e can look to

regulations and cases interpreting the federal Act for guidance in our interpretation of Ohio

law.") (quoting *City of Columbus Civil Serv. Comm'n v. McGlone*, 82 Ohio St. 3d 569, 1998

Ohio 410, 697 N.E.2d 204, 206-07 (Ohio 1998)).

---

[7]As this Court noted in a previous decision:
[T]he recent opinion in *Johnson v. Metrohealth Med. Ctr.*, 2004 Ohio 2864, *P7-*P23 (Ohio
App. 8 Dist. June 3, 2004) . . . creates a question of whether Ohio § 4112.01(A)(13) is a less
stringent standard than the analogous 42 U.S.C. § 12102(2) definition of disabled.  *See also*,
*Fink v. Ohio Health Corp.*, 2004 U.S. Dist. LEXIS 28567, *24 n.6 (Aug. 26, 2004) ("The
Court notes that a recent decision by the Eighth District Court of Appeals calls this premise
[that the required showings to establish a "disability" under the ADA and O.R.C. § 4112 are
identical] into question") (*citing Johnson*)).  The Court also notes, however, that the *Johnson*
opinion is a singular instance, which other courts have declined to follow.  *See, e.g.*, *Vickers
v. Wren Industries*, 2005 Ohio 3656, *P34 (Ohio App. 2nd Dist. 2005) (in light of *Johnson*,
the court was still "unpersuaded that precedence does not allow [courts] to look to federal
law for guidance in whether [a claimant] was disabled").
    Thus, unless and until the Ohio Supreme Court interprets Ohio's statute otherwise,
the Court applies the federal ADA analysis to Ohio § 4112 claims, which includes the
definition of "disabled" found in 42 U.S.C. § 12102(2).
*Hayest v. Cleveland Clinic Found.*, No. 1:06cv20, 2006 U.S. Dist. LEXIS 76013, *7 n.3 (N.D. Ohio 2006).

The ADA prohibits employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a); *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007).  To state a claim for disability discrimination in violation of the ADA, a plaintiff must plead (1) that he or she has a disability; (2) that he or she is otherwise qualified for the job; and (3) that the defendant either refused to make a reasonable accommodation for the claimed disability or made an adverse employment decision regarding the plaintiff solely because of his or her disability.  *See Smith v. Ameritech*, 129 F.3d 857, 866 (6th Cir. 1997); *Macy*, 484 F.3d at 363 (quoting *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996)).

The Sixth Circuit has found "that a medical leave of absence can constitute a reasonable accommodation under appropriate circumstances."  *Cehrs v. Northeast Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 783 (6th Cir. 1998).  Additionally, "an impairment must be substantially limiting <u>at the time of the requested accommodation</u>."  *Burch v. Coca-Cola Co.*, 119 F.3d 305, 315 (5th Cir. 1997) (emphasis added) (citing *Pritchard v. The Southern Co. Servs.*, 92 F.3d 1130, 1133 (11th Cir. 1996); *Muller v. Automobile Club of S. Ca.*, 897 F. Supp. 1289, 1295-96 (S.D. Ca. 1995)), *cert. denied*, 522 U.S. 1084 (1998).  *See also*, *Leicht v. Hawaiian Airlines, Inc.*, 77 F. Supp. 2d 1134, 1147 (D. Hawaii 1999) ("Whether an impairment is substantially limiting is measured at the time of the requested accommodation.") (citing *Burch*, 119 F.3d at 315), *reversed on other grounds*, 15 Fed. Appx. 552 (9th Cir. 2001); *accord Roush v. Weastec, Inc.*, 96 F.3d 840, 844 (6th Cir. 1996) (explaining that although plaintiff's ability to work was substantially limited during the time she suffered from a severe kidney condition and underwent a number of surgeries and medical procedures to correct the condition,

-24-

the condition was subsequently corrected and thus plaintiff did not "<u>presently</u> ha[ve] a disability." (emphasis added)).  Similarly, "[w]hether an individual is a qualified individual with a disability is determined as of the time of the employment decision."  *Hamm v. Exxon Mobil Corp.*, No. 06-1692, 223 Fed. Appx. 505, 2007 U.S. App. LEXIS 11192, *5 (7th Cir. May 9, 2007) (unpublished) (citing *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996) (in turn citing 29 C.F.R. app. § 1630.2(m)).

True North argues that Cox cannot demonstrate that she is "disabled" under the applicable statutes, and consequently Count III must be dismissed.  True North, however, puts the summary judgment "cart" before the Rule 12(b)(6) motion to dismiss "horse"; whether Cox is and was legally "disabled" under the anti-disability discrimination statutes is a fact-based inquiry and determination that "is not generally motion to dismiss territory."  *See Homeyer v. Stanley Tulchin Associates, Inc.*, 91 F.3d 959 (7th Cir. 1996).  The existence of a disability is determined on a fact-specific, case-by-case basis.  *See Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002); *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999) ("Whether a person has a disability under the ADA is an individualized inquiry.").  The Court obviously recognizes that Cox, to eventually recover on her disability discrimination claims, must be able

to show, inter alia, that she is, legally, "an individual with a disability."[8]  While True North's

position may be ultimately borne out, that conclusion of fact is premature at this stage of

the litigation.

Importantly, at the Rule 12(b)(6) motion stage, "an accusation of discrimination

on the basis of a particular impairment provides the defendant with sufficient notice to begin its

defense against the claim."  *EEOC v. J. H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir.

2001).  Cox's Second Amended Complaint contains sufficient factual allegations in support of

her claims to allow True North to prepare its defense.  Cox alleges that she had life-threatening

cancer which substantially limited her major life activities – including the major life activity of

---

[8]At the prospective summary judgment stage, Cox's evidentiary burden depends on which claim is at issue.  As to her "failure to accommodate" claim, the Sixth Circuit recently confirmed that "claims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination."  *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 868 (6th Cir. 2007) (citation omitted).  This conclusion is consistent with the definition of direct evidence, the Sixth Circuit reasoned, "for if the fact-finder accepts the employee's version of the facts, no inference is necessary to conclude that the employee has proven this form of discrimination."  *Id.*  Accordingly, the Court must "jettison the familiar *McDonnell Douglas* burden-shifting framework applicable in indirect-evidence cases (also called 'circumstantial-evidence cases'), and . . . analyze the claim under the [direct evidence] framework" articulated in *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 452 (6th Cir.), cert. denied, 543 U.S. 817, 125 S. Ct. 68, 160 L. Ed. 2d 25 (2004).  *Kleiber*, 485 F.3d at 868.  The standard is as follows:

> (1) The plaintiff bears the burden of establishing that he or she is disabled. (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Id.*

Absent direct evidence of disability discrimination (potentially applicable for Cox's "adverse employment decision" claim), Cox would be required to establish at the summary judgment stage a prima facie case of disability discrimination showing that: (1) she is disabled; (2) she was otherwise qualified for the position, with or without reasonable accommodation; (3) she suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced.  *See Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007) (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996)).

working – at the time True North fired her.  She also alleges that True North fired her after first denying her request for reasonable accommodations in the form of leave to receive life-saving medical treatment.  Indeed, Cox presented a doctor's opinion that she could not work at that point in time (i.e. pre-treatment).

Other courts have addressed analogous situations.  *See Braverman v. Penobscot Shoe Co.*, 859 F. Supp. 596 (D. Me. 1994) (plaintiff was arguably disabled at the time of his treatment because he had cancer that was not in remission at the time of termination); *Leicht*, 77 F. Supp. 2d at 1147-48 ("[T]he court cannot conclude that, as a matter of law, cancer that is life-threatening is not a disability if it is life-threatening for what [defendant] characterizes as 'only' four months.").  Here, it is at least plausible under the facts as alleged that Cox was disabled by virtue of the life-threatening cancer at the time she was denied a reasonable accommodation and suffered an adverse employment action.  This is so even if it turns out that she is not disabled now after fully recovering from her successful surgery; True North did not and could not know when Cox would be able to return to work, and under what conditions, at the time she requested accommodations in the form of leave and subsequently suffered an adverse employment action.  True North concedes as much when, attempting to distinguish the *Braverman* and *Leicht* cases, it argues that the courts in those cases "analyzed the <u>current</u> health condition of the plaintiffs <u>when they were terminated</u> by their respective employees."  (ECF No. 17, Def's Repl. Mem. at 3 (emphasis added).)  Accordingly, True North's Rule 12(b)(6) Motion is **DENIED** as to Count III.

**D.  Count IV: Common Law Public Policy Claim**

In Count IV of her Second Amended Complaint, Cox alleges a claim for wrongful termination in violation of the public policies expressed in the FMLA and its implementing regulations as promulgated by the DOL.  True North argues that the Supreme Court of Ohio has held that Ohio does not recognize a common-law public policy claim premised on a violation of the FMLA, and therefore Cox's public policy claim must be dismissed.  Cox argues that her claim is premised on a violation of the public policy embedded in the FMLA's implementing DOL regulations.

In her supplemental brief, Cox concedes that "should this Court agree with Ms. Cox that she is eligible for FMLA benefits, then Ms. Cox cannot establish the jeopardy element necessary to state a valid claim for termination [in] violation of public policy."  (ECF No. 15, Pltf's Opp. Br., at 8.)  As explained previously, the Court rejects True North's reading of the 12-month service requirement, the ground on which True North rests its argument opposing Cox's FMLA claims.  Assuming that Cox can satisfy the other FMLA eligibility requirements, she would be entitled to enforce the rights bestowed thereby.  Accordingly, True North's Rule 12(b)(6) Motion is **GRANTED** as to Count IV.

**E.  Count V: State Law Promissory Estoppel Claim**

In Count V of her Second Amended Complaint, Cox alleges a claim for promissory estoppel under Ohio law.  True North argues that Cox has "completely failed to set forth a cause of action for promissory estoppel" because she "has not alleged that True North promised her continued or future employment."  (ECF No. 13, 16.)  The Court disagrees.

-28-

Ohio has a strong presumption in favor of employment relationships being terminable at-will.  The doctrine of promissory estoppel, however, can restrict the ability of employers to terminate employees at-will.  *Gouge v. Bax Global, Inc.*, 252 F. Supp. 2d 509, 519 (N.D. Ohio 2003) (citing *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100 (1985)).  The elements of promissory estoppel are: (1) a promise, clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) reliance that is reasonable and foreseeable; and (4) injury caused by the reliance.  *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100 (1985).  *See also*, *Rigby v. Fallsway Equip. Co., Inc.*, 779 N.E.2d 1056, 1061 (Ohio.App. 9 Dist. 2002).

The test for promissory estoppel is: (1) whether the employer should have reasonably expected its representation to be relied upon by its employee; and if so, (2) whether the expected action or forbearance actually resulted in and was detrimental to the employee.  *Gouge,* 252 F. Supp. 2d at 519.  "To maintain a promissory estoppel claim, an at-will employee must allege detrimental reliance on specific promises of job security."  *Id.*  The promise must be clear and unambiguous it its terms, and the detrimental reliance must be justified and reasonable.  *Id.*  "The meaning of the . . . promise, and whether the acts flowing from it were reasonable, are questions of fact for jury determination."  *Mers*, 19 Ohio St.3d at 105.

Courts have held that "vague or nebulous assurances of job security are not sufficient."  *See, e.g.*, *Abdulnour v. Campbell Soup Supply Co., LLC*, 464 F. Supp.2d 711, 720 (N.D. Ohio 2006); *Gouge v. Bax Global, Inc.*, 252 F. Supp.2d 509 (N.D. Ohio 2003); *Welch v. Finlay Fine Jewelry Corp.*, 2002 WL 206047 (Ohio.App. 10 Dist. 2002).  True North's argument that Cox cannot successfully allege a promissory estoppel claim because she allegedly cannot

-29-

show a "specific promise of continued employment" is anchored primarily in analogy to the *Welch* case.  The Court therefore finds illustrative a brief look at the *Welch* case.

In *Welch*, a jewelry store employee was terminated for leaving a safe unlocked during working hours, in violation of the defendant's company policy.  *Welch*, 2002 WL 206047, at *1.  The employee sued the employer, arguing that her direct supervisor did not require associates to lock the safe during working hours.  *Id.*  Because she relied on her supervisor's instructions, the plaintiff contended, the defendant should be estopped from terminating the employee for not following company policy.  *Id.* at *3.  The trial court dismissed the plaintiff's complaint, and the appellate court affirmed the dismissal.  *Id.* at *5.  The appellate court noted that the plaintiff did not allege that her supervisors specifically promised her continued employment if she followed their orders.  *Id.* at *3.  The court held that the plaintiff's subjective belief that she would not be terminated if she followed her supervisor's orders was not a specific promise of job security.  *Id.* at *3.

True North argues that *Welch* is "on all fours" with the instant case.  (ECF No. 6, Def.'s Part. Mot. to Diss. First Am. Compl., 18.)  *Welch*, however, is easily distinguishable from Cox's case.  The plaintiff in *Welch* did not allege any specific promises of job security, and instead relied on her own subjective belief that she would not be fired if she followed her supervisors' orders.  Conversely, Cox alleges that True North's Manager of Operations "told Ms. Cox not to worry about her job and to worry only about regaining her health and getting well." (ECF No. 10, Second Am. Compl. ¶ 81.)  Cox also alleges that the same Manager of Operations "stated that True North would have a job for Ms. Cox when she recovered from her illness." (Compl. ¶ 82.)  Although True North argues that "Plaintiff's subjective belief that she would be

re-hired by True North is not a substitute for specific, unambiguous promise that should we be rehired by True North [sic]," the point is that Cox's Second Amended Complaint does more than just allege that she had a subjective belief that she would be rehired.  To the contrary, Cox alleges specific statements by True North personnel that a trier of fact could, using the language of the *Twombly* Court, "plausibly" determine constitute a specific unambiguous promise.  While True North may raise this argument again at the summary judgment stage following discovery (if appropriate), dismissal at this juncture is premature.

The Court further finds that Cox also alleges the remaining elements of promissory estoppel.  Cox alleges that she relied on Solomon's representations and that her reliance was detrimental in several specific ways (including preventing Cox from vigorously challenging True North's denial of her FMLA leave).  (Compl. ¶ 76-77.)  Cox also charges that True North should have reasonably expected Cox to rely on Ms. Solomon's representations.[9] (*Id.* at ¶ 75.)

Furthermore, the Court rejects True North's assertion that Cox cannot show that she detrimentally changed her position in reliance on True North's representation.  Cox, True North argues, fails to state a claim for promissory estoppel because she failed to provide any case law supporting her claims in her Memorandum in Opposition to True North's initial Partial Motion to Dismiss.  True North is mistaken for two reasons.

First, True North's initial Motion to Dismiss Plaintiff's First Amended Complaint contains no argument to dismiss Count V because Cox failed to show detrimental reliance; the

---

[9]True North primarily disputes that a promise existed, not that Cox's reliance on Solomon's statement was unreasonable or unforeseeable, nor that Solomon could not have reasonably expected Cox to rely on her representations.

only arguments True North advanced were those attacking the alleged promises of employment. (See ECF No. 6, 17-21 (concluding "Plaintiff is unable to prove the required "meeting of the minds" indicating that the alleged oral statements of True North representatives would alter the terms of Plaintiff's discharge.  Thus, Count Five of Plaintiff's First Amended Complaint must be dismissed.").)  Indeed, the first time that True North raised its detrimental reliance arguments was in its penultimate filing in this case; True North's Reply Memorandum in Support of Its Motion to Dismiss Plaintiff's Second Complaint.  To expect Cox to argue in response to arguments True North had not yet made is patently unreasonable.

Second, far from a single allegation of detrimental reliance as True North would have the Court believe, (see ECF No. 13, 19-20), Cox's Second Amended Complaint alleges at least five different ways that she detrimentally relied on True North's representations to her.[10] While True North acknowledges Cox's several arguments, it attacks only one; Cox's allegation that she detrimentally relied on the purported promises to her when she "delayed her search for a job when she initially recovered from her cancer and its treatment."  (ECF No. 10, Second Am. Compl. ¶ 85(d).)  True North makes no substantive arguments as to the other detrimental reliance allegations.

_____

[10]Cox alleges that her reliance on True North's representations was detrimental to her in, at least, the following ways: a) It prevented her, in part, from obtaining a reasonable accommodation from True North; b) It prevented her, in part, from vigorously challenging True North's unlawful denial of her request for family medical leave; c) It caused, in part, the loss of her job as True North fired her for seeking treatment instead of reporting to work and refused to allow her to return to work when she survived her initial encounter with cancer; d) It delayed her search for a job when she initially recovered from her cancer and its treatment; and e) It delayed her application for unemployment benefits.
(ECF No. 10, Second Am. Compl. at 10, ¶ 85.)

-32-

For purposes of a motion to dismiss under Rule 12(b)(6), the issue is not whether a plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). Here, Cox's allegations, if believed by a trier of fact, would support a finding in her favor on the promissory estoppel claim. As explained previously, True North may raise its arguments on Cox's promissory estoppel claim at the appropriate point following discovery. For now, though, True North's Rule 12(b)(6) Motion is **DENIED** as to Count V.

**F.  Count VI: Punitive Damages/Emotional Distress Damages Claims**

In Count VI of her Second Amended Complaint, Cox alleges a claim for punitive and/or emotional damages predicated on True North's alleged violations of her rights under the ADA and § 4112. True North only argues (1) that FMLA claimants are not entitled to recover such damages, and (2) that Cox may not recover on punitive or emotional damages claims pursuant to the ADA or § 4112 because she is not disabled.

Under the federal FMLA, a plaintiff is not entitled to recover emotional distress damages or punitive damages. *See, e.g.*, *Rosania v. Taco Bell of America, Inc.*, 303 F. Supp.2d 878, 882 (N.D. Ohio 2004). To the extent that Cox predicates her claim in Count VI on True North's alleged FMLA violation, the claim must therefore be denied.

On the other hand, damages for emotional distress and punitive damages are available to successful claimants under the federal ADA and Ohio anti-disability discrimination statutes. *See, e.g.*, *Kolstad v. ADA*, 527 U.S. 526, 529 (1999) ("Under the terms of the Civil Rights Act of 1991, 105 Stat. 1071, punitive damages are available in claims under . . . the Americans with Disabilities Act of 1990 (ADA), 104 Stat. 328, 42 U.S.C. § 12101 *et seq.*");

-33-

*Moorer v. Baptist Mem. Health Care Sys.*, 398 F.3d 469, 485 (6th Cir. 2005) (affirming emotional distress damages award on ADA claim and explaining that "the statutory authorization for compensatory damages under the ADA and Title VII derives from the same source.") (citing 42 U.S.C. § 1981a(a)); *Tramill v. United Parcel Serv.*, (6th Cir. 2001), 10 Fed. Appx. 250, 255-56 (affirming punitive damages award under ADA claim); *Garcia v. Third Fed. S&L Ass'n of Cleveland*, Case No. 1:06-cv-1990, 2007 U.S. Dist. LEXIS 30887 (N.D. Ohio Apr. 26, 2007) ("Section 4112 contains a broad remedial scheme that entitles an aggrieved employee to 'damages, injunctive relief, or any other appropriate relief.'  Punitive damages may even be awarded if actual malice is shown." (internal citations omitted) (citing *Rice v. CertainTeed Corp.*, 84 Ohio St. 3d 417, 1999 Ohio 361, 704 N.E.2d 1217, 1220-21 (Ohio 1999))); *Rice v. CertainTeed Corp.*, 84 Ohio St. 3d 417, 418,  704 N.E.2d 1217, 1218 (Ohio 1999) (holding that Ohio Revised Code § 4112.99 "authorizes an award of punitive damages in civil employment discrimination actions."); *Sicklesmith v. Hoist*, 159 Ohio App.3d 470, 2006-Ohio-6137 (the plaintiff was awarded punitive damages on his disability discrimination claim).

As explained above, Cox's Second Amended Complaint contains sufficient allegations to state a claim for disability discrimination under federal and state law.  The Court further finds that Cox's Second Amended Complaint also contains enough factual detail to allege that True North acted with malice and conscious disregard for Cox's protected rights when it denied her leave and subsequently terminated her employment.  Accordingly, True North's Rule 12(b)(6) Motion is **DENIED** as to Count VI.

-34-

### III.  CONCLUSION

For the reasons provided above, True North's Motions to Dismiss (ECF Nos. 6, 12) are **GRANTED** as to Count IV, but **DENIED** as to Counts I, II, III, V, and VI.[11]

**IT IS SO ORDERED.**

/s/Dan Aaron Polster     November 20, 2007
**Dan Aaron Polster**
**United States District Judge**

---

[11]Also, True North's Partial motion To Dismiss Plaintiff's Complaint **(ECF No. 2)** is denied as moot.

-35-